In Larry Pagan's second trial before the District Court, the prosecution violated the law of the case doctrine by impeaching a defense witness, a crucial defense witness, who claimed to be a member of the Supreme Court. But as I read Judge Kaye's ruling in the first case, he's got two grounds. One is prejudice, and the other is there was no formal prior notification which was required. This time, there was notification. That's correct. Absolutely correct. But as I understand Rule 609, there are two conditions precedent to the government bringing out this criminal conviction. The first being notice, as the courts indicated, the second being the balancing test under Rules 403 and 609. Now, in the second trial, after the notice comes from the U.S. Attorney that he intends to introduce this evidence, why nothing out of the defense counsel until after the questions had been asked and answered? I mean, you could have asked for an in limine hearing on the question. I mean, there are all kinds of things you could have done. In fact, that's the purpose of the prior written notification, to get a ruling before the bill is wrong. Yes. The defense thought the issue was closed from the first trial. Well, my question was asked, has he been convicted of another crime? Why was there no objection then? There was an objection immediately. What's the answer? A split second later. Maybe you're lowering the dice on what the answer is going to be. Yes. A split second later, if you look at the transcript, which you apparently have right in front of you. What page? This would be excerpt of record, appellant's excerpt of record, page 55. If they knew where he was going, because they were going to notice that they were going to raise this, and the first question before they got to the ultimate question, they knew where he was going. Nobody made an objection. There was no motion in limine. It was just wide open. There was no specific question about conviction. Rule 609 discusses conviction, and he's talking about, you know, you know about drug dealing. There's no raising of the conviction, and when there is, the objection immediately follows. Immediately follows. I'm reading the transcript. This is now the second trial. Question. You knew talking to Tito that he was involved in drug dealing. No, sir. You yourself know about drug dealing, don't you? Red light should go on right there. You know what's coming. This is a precise rerun of the first trial. Yes, and it seemed like. In an incident. Yes. You were around in the past in an incident, sir. Red light flashes for the second time. Red light was on. Actually, orange light was on at that point, and defense counsel believes that the prosecutor was trying to very carefully skirt the direct question about a conviction, which Rule 609 talks about evidence of a conviction, not evidence of have you been around drug dealing in the past. Yeah. Okay. Well, but 404 specifically says you can't bring in past acts of misconduct. I mean, these are foundational questions to impeachment because of a conviction. If you thought that he was skirting around the conviction by just going to his bad acts, you should have been objecting you can't impeach a person by going to his bad acts. That's probably accurate, yes. But at the time, it seemed like the prosecutor was very carefully going up to the line but not stepping over the line. But very carefully going up to the line that the prosecutor alerted you by letter that the prosecutor intended to cross. With the same court, the same case, the same facts, the same circumstances, it really seemed to me that the prosecutor would not even attempt to elicit the conviction again. And I was, frankly, flabbergasted when he uttered the words, haven't you been convicted of manufacturing and distributing drugs before? And it is true, as soon as that question is asked, that's when the objection came. And I was, frankly, flabbergasted that he asked it for a second time with a clear ruling from the district court at the prior trial that this was prejudicial. So I believe there are those two conditions precedent, the notice and the judge determining on a balancing test if the probative value is less than the prejudicial effect. How important was this testimony? I mean, there's a lot of evidence against your client. And it seemed to me that the evidence for Mr. Salas was kind of out there along the edge. Well, it was the foundation of the defense of lack of knowledge, that Mr. Pagan met this Tito under innocent circumstances on a chance meeting, and Mr. Salas, the witness, was the one who was the only one present to testify about the circumstances of Mr. Pagan meeting Tito. So it was the foundation of the defense of lack of knowledge. This witness came immediately after the defense opening statement, which clearly is focusing in on the knowledge element, lack of knowledge element, to the conspiracy and the two other substantive charges. So we believe or submit that it's clearly a law-of-the-case issue. There were no changes in the circumstances. The fact that notice was given really doesn't address the second prong, which is the prejudicial effect upon the defendant by bringing out the stale conviction of a crucial defense witness. The prosecutor, prosecution, prosecutor misconduct case is a Sanchez-Robles case, talks about is there misconduct? I think clearly there was. Secondly, was the objection made in a timely fashion on the record? I submit it was. It came immediately after the prosecution stepped over the line, so to speak. And the prejudice to the defendant, I think, is apparent. Was a curative instruction given? A curative instruction was given by Judge Kagan. Motion to strike made and granted? Yes. Yes. But the bell had already been rung. I mean, curative instructions are great in theory, but when you have a jury sitting there and they've already heard this damaging evidence, even though they may try as hard as they can to listen to the judge's instruction to strike it from their memories, it seems to me that in deliberations it's probably a very difficult thing for them to do individually, if not as a group. We believe that the prejudice is apparent because at the first trial when it came in, there was a hung jury. I think it prevented an acquittal, frankly. And at the second trial, it ensured a conviction. So I believe that the prejudice here is akin, somewhat akin to the Sim case that I've cited, where in that case the defendant was at a hung jury at the first trial where no evidence of two prior stale convictions came in. And at the second trial, the prosecution did elicit testimony and evidence of two prior convictions, and the jury convicted him at the second trial. So I think it's analogous to the, somewhat analogous to the Sim case. Okay. You've saved some time. We'll hear from the government, and then you'll get a chance to respond. Thank you. Good morning, Your Honors. May it please the Court. My name is Candace Kelly on behalf of the United States. Prosecutor in this case may not have chosen the most prudent approach. Now, I should know this, but I don't. Were you the prosecutor, or are you just doing this on appeal? I was not the prosecutor. The prosecutor was Mr. Mielek, who is serving in the armed forces in Iraq, or he would probably be here himself. So I'm standing in for him, but I did prepare the briefs. So Mr. Mielek's conduct may not have been the most prudent course of action by not raising this outside the presence of the jury before asking the question, particularly given the circumstances of the first trial. However, the question really is whether his conduct is misconduct. And the record is clear that he did not act in bad faith in choosing this course of action. It appears from the record, and there's a specific quote from Mr. Mielek after the objection and during the colloquy in his explaining why he chose this course of action, he says, and this is excerpts of record 56 and 57, The court ruled last time that he, referring to the defendant, didn't have notice, it was not fair because he didn't have notice, and the balancing was off based upon that. So Mr. Mielek clearly understood the first ruling to be that because he didn't give notice, that is what threw the balancing test off. And reading the ruling in the first trial, that may not have been an accurate reading of the court's ruling. However, that is consistent with what Mr. Mielek did, that understanding of the ruling, which is that he gave written notice to Mr. Barbie, and he also, as was pointed out, asked questions that led up to the ultimate question about the conviction, which clearly put Mr. Barbie on notice, having been trial counsel in the first trial and having received written notice. He was clearly on notice. You know, he knew that this was what the next question was going to be. Well, are you – are you inferring here that the appropriate thing for defense, then, was prior to the start of the trial is move in limine, being on notice now, move in limine so you never get into this posture? Yes, Your Honor. That is – Doesn't that throw the burden on – is that the proper way to approach this, if he was – if it was misconduct, considering the first ruling? It was ruled as prejudicial. So by giving the notice, he's forcing the defense either to go in limine or suffer, as they did, watching him proceed down this road and, when crossed the line, make an objection. Your Honor, I believe that the reason that there is a notice requirement is for the very reason of allowing defense counsel to raise an objection outside the presence of the court. So I don't think that – I have an interesting argument, because that says, if you don't move, then I'm going to do my misconduct, and then I won't get charged with anything, and the judge will rule, and we'll just go on. It's sort of a strange posture, isn't it? If, in fact, it was misconduct, as alleged, it puts the defense on burden to stop a misconduct. I understand that interpretation of it. If it hadn't been for the first trial, I'd say, oh, well, but we – this is a rerun. It is a rerun, Your Honor, but I do think that the record is clear that there wasn't bad faith, that Mr. Mulek was not intending to violate a rule. He understood the rule to be that he had failed to give notice. And in the second case, he gave notice. So he clearly believed that he was following the rule. And certainly, he did allow, whether it's shifting the burden or not, he certainly allowed defense counsel the opportunity to object pretrial. Kennedy. Yes, Your Honor. Let me ask you a question. If the judge in the first trial made a balanced assessment of the probative value of the evidence versus the prejudicial effect it would have in the first trial and ruled that it had prejudicial effect, 403, right, is that ruling law of the case as to the second trial, or is it – is that prejudicial versus probative balancing act to be done in view of the evidence that's come in in the second trial? Will it be done new? Well, Your Honor, I think there is – because the district court retained jurisdiction over the case, certainly that balancing test can be renewed. And it would be – it would have been prudent for the prosecutor in this case to alert the court to this issue and ask for a reconsideration of that ruling in light of the evidence in the second trial. So is it your position that as a matter of law, a 403 ruling in the first case is not law of the case in the second case? I believe that it is. Certainly, if it is not reconsidered, it would be – it would be by – it would be law of the case for the second case. But I don't think that there – it is – that the prosecution or the court is prohibited from revisiting that evidentiary question in the second case. And I think here – Yeah, but that brings my question in. Under what circumstances? We wandered into it in this case because we sprung it during the term that the jury is listening and the defense counsel is waiting for the thing to spring. So who should suffer the burden on that? It should have been brought up if a motion to eliminate would have solved all of this. Exactly. A motion to eliminate from either side would have solved all of this. Exactly. And neither side brought a motion. So who's going to suffer what happened here, considering the first balancing test and the fact that the prosecution decided to go ahead again into this territory, knowing what happened the last time? I think that there are two – there are two prongs to the answer to that question. The first being whether or not the prosecutor acted in bad faith, which would be misconduct. And I think the record is clear, as I've pointed out, that he did not act in bad faith. But more importantly with respect to this case – That's based upon the fact of your interpretation of what the judge did, saying that he relied on the fact that no notice was given, so it didn't give the defense a chance. However, he did rule the nature of the evidence in the balancing test was prejudicial. So what happened in the second trial that the prosecutor now, going down the road, was there something happened in the second trial where you thought, gee, this won't be prejudicial now? Well, Your Honor, I think that that – my point is that I think that the prosecutor may have misunderstood the fact that there were two separate prongs to the first ruling, which were there was no notice and it was prejudicial. From the statements that the prosecutor made and from his actions of giving notice and the statements that he made after the objection was raised, it seems apparent that the prosecutor believed that it was the notice that threw off the balance. So by giving notice, there was no longer a – and I think that we can agree that that was a – that was not the correct interpretation, but I think that looking at that is important in trying to determine whether or not he acted in bad faith. To refresh my memory, what did he say after the objection? He said the court ruled last time that he, referring to the defendant, did not have notice, it was not fair because he did not have notice, and the balancing was off based on that, which is what the prosecutor said. So his clear understanding, which is borne out by his actions, was that the notice was the key to the balancing test. And I think that a fair reading of the judge's order, that's – that's incorrect. But whether he was mistaken or not does not – I think that if he was mistaken it certainly is not bad faith. And in any event, even if it were in bad faith, I think in this case, this error is harmless because the – the government's case was very strong. The court made a very clear, forceful ruling, struck the testimony, told the jury to disregard it, and actually told the jury to disregard more than what Mr. Barbie would have actually objected to. Mr. Barbie evidently was happy to let the prosecution ask up until the question where the witness said, I was arrested, and then – but not the question about the conviction. And the court told the jury to disregard any mention of his involvement in drug trafficking. There was plenty of evidence of drugs being sent to the defendant, but his claim was that he had given his telephone to TICO, and all the telephone calls were to TICO, and all the drugs were to TICO, and he was just an innocent bystander to TICO. Now, what evidence did the government have that that was not true? The government, I think, very solidly discredited all of the witnesses who even raised that – that defense theory, which was highly speculative. There was no evidence, certainly – and certainly not from Mr. Salas, who was the important witness in terms of this – this argument. Mr. Salas, simply all his – his only reason for testifying was to introduce the jury to Mr. Tito, saying, Tito – I introduced Tito to Mr. Pagan. That's it. There was no mention that Tito was involved in drug dealing. It was the defendant's sister who said that she had called on two occasions and – to Mr. Pagan's phone and that Tito had answered. Now, the government showed through telephone records that all of – all of the telephone records from Mr. Pagan's phone showed that he was making repeated calls to his girlfriend and interspersed with all of the calls to the various drug dealers, Mr. Lopez, Mr. Torres, and Mr. Cruz. It also was discredited by the fact that the sister, who is the one who raised this, who said, I called Tito – I called my brother and Tito answered the phone, in all of the months of phone records for Mr. Pagan, there were only two phone calls from the sister. And both of those phone calls in either just before or just after, there were calls to the defendant's girlfriend. So unless Tito was not only, you know, handling his drug trafficking but also having an affair or having a serious relationship with his girlfriend, then the phone records simply discredited this defense theory, which, again, was raised – Kennedy. The phone records discredited the so-called bystander defense. Well, there was no evidence that Tito had any involvement in drug dealing. The only – the evidence about Tito was that he was introduced to Mr. Pagan by Mr. Salas, and that the sister called twice to Mr. Pagan's phone and Tito evidently answered, and that Tito had friends who hung around his home. That was the extent of the evidence of Tito. So the defense theory was very speculative. And the phone records discredited the sister. They also – there was a nephew who testified, Mr. Pagan's nephew who testified, who said that Mr. Pagan was very naive and he called him almost every day and played pranks on him. There were no phone records showing that Mr. Pagan's phone didn't receive any calls from that nephew. So each of the witnesses who testified, other than Mr. Salas, they were all family members. They all talked about telephone calls. The daughter, for example, who was – the 13-year-old daughter said, oh, law enforcement, I'm going to call Mr. Pagan. And there was no telephone record showing a call from the daughter's house to Mr. Pagan. So it was – the defense theory really only attacked the connection – the telephone records that the government had set forth that showed that Mr. Pagan was connected to all of these drug packages that came in, the drug dealers, through phone records. That was their really – their only attack. And the government discredited those – all of their fairly speculative theories on the fact that Tito was, in fact, the drug dealer. Can I see that? I'm out of – Was Tito ever prosecuted? No. Tito – I think – I don't think the government knew who Tito was. The only – Mr. Salas testified there was a gentleman named Tito, and I believe a photograph was introduced, and that was the extent of the existence of – So the answer was he was not prosecuted. No, he was not prosecuted. Thank you for your argument. Before you sit down, I have one thing to say, and I wanted to say it outside the argument. And I wish to introduce this by saying I do not mean this in the least unkindly. When I asked you whether you had been the trial attorney prosecutor, you said no, and you said that he's now serving in Iraq. I say this as myself as a former military officer with enormous admiration for anyone serving in the armed services. But the government has so many advantages in these cases, and I understand precisely why it was almost irresistible for you to say this as a tribute to him. Nonetheless, there's a bit of a suggestion in there that the prosecutor, the patriotic soldier and so on, and we would – I would be more comfortable or would have been more comfortable if you had simply said, no, I was not the prosecutor. But I finish with what I said. I did not mean this unkindly. And this is only my own reaction to this. I'm not sure I'm speaking for my colleagues on the point. I understand your point, Your Honor. And I assure you that that was not my intention. I just wanted to make sure the Court understood why he was not the prosecutor. Yes, I did not think it was your intention. Okay. Thank you, Your Honor. Response? Yes, just briefly. With regard to the questions about whose responsibility it was to raise in motion and eliminate this issue, going back to the legislative history of Rule 609, there's a presumption against admission of these stale convictions in any case. So at the first trial, I believe it would have been the onus of the prosecution to raise outside the presence of the jury this issue. And when the judge determined, when the trial judge determined that the prejudicial effect was far greater than any probative value, at the second trial, even more so. So the prosecution should have raised this up before the trial judge outside the presence of the jury. As I said, I was frankly flabbergasted that he did cross the line. I take the Court's comments under advisement that perhaps I should have objected a little bit earlier, but I thought he was being very careful not to cross the line. When he did, I immediately objected. So that's the point I wanted to raise. Okay. Thank both sides for their arguments. I'm now going to pronounce the name correctly. United States versus Bagan is now submitted for decision. Thank you. The next case on the argument calendar is American International Specialty Lines Insurance Company versus Seagate Technology. Thank you.
judges: Brunetti, W. Fletcher, Bea